## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DESSIE JOHNSON, Individually
and as Personal Representative of
the Estate of ERNEST JOHNSON,

      Plaintiff,

v.

R.J. REYNOLDS TOBACCO
COMPANY; PHILIP MORRIS USA
INC.; and LIGGETT GROUP LLC,

      Defendants.

_____/

Case No.: 4:22-cv-00144-RH-MAF

State Case No.: 2020-CA-000635

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

This Court should dismiss Plaintiff's Amended Complaint because its allegations fall short of what governing law requires. Plaintiff alleges a cause of action in her individual capacity for her own personal injuries and a cause of action for wrongful death on behalf of the estate of Decedent Ernest Johnson ("Decedent").[1] Relying mostly on generic boilerplate allegations, Plaintiff's Amended Complaint asserts that Defendants Philip Morris USA Inc. and R.J. Reynolds Tobacco Company (collectively, "Defendants") violated the Racketeering Influenced Corrupt

---

[1] Joining these two unrelated and distinctly separate claims is improper, and Defendants will also seek to sever of Plaintiff's individual claims from the claims brought on behalf of Decedent's estate, in the event the Court denies Defendant's motion to dismiss.

Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Count I), were negligent (Count II), sold a defective product and are thus strictly liable (Count III), and negligently misrepresented or concealed information (Count IV).[2]

Plaintiff does not allege that she or Decedent are members of the *Engle* class, and therefore she may not take advantage of the findings in *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006). But Plaintiff's Amended Complaint is so generic that it reads as if she were trying to plead a class action about decades-old tobacco industry conduct and provides little information about Plaintiff or Decedent.

Despite being provided another opportunity to do so,[3] Plaintiff has failed to allege many of the ultimate facts necessary to state a claim for relief, including any causal connection between Defendants' allegedly actionable conduct and Plaintiff's and Decedent's injuries. Plaintiff's failure to plead these essential facts and elements is fatal to her strict liability and negligence claims (Counts II, III, and IV). Moreover, Plaintiff's RICO claim (Count I) should be dismissed because the damages she seeks are not available under the RICO statute. Additionally, Plaintiff fails to properly allege a claim under RICO.

---

[2] The reasons why Plaintiff's personal injury claims should be dismissed apply equally to her wrongful death claim.

[3] On March 29, 2022, the state court granted Defendants' Motion to Dismiss, ordering Plaintiff "to file an amended complaint that addresses the issues raised in Defendants' Motion. *See* Order Granting Defs.' Mot. to Dismiss Pl.'s Compl., or Alternatively, Mot. to Strike and For More Definite Statement (Mar. 29, 2022).

For these reasons, the Court should dismiss Plaintiff's Amended Complaint in its entirety for failure to state claims against Defendants.[4]

## LEGAL STANDARD

A complaint is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not contain sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to meet the plausibility standard, a plaintiff must provide more than conclusory allegations. *See id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint "requires more than labels and conclusions"). More is required "than a sheer possibility that a defendant acted unlawfully" and facts that are "merely consistent" with liability. *Iqbal*, 556 U.S. at 678. And although a court must accept a plaintiff's well-pleaded facts as true when considering a motion to dismiss, it need not accept "conclusory allegations [or]

---

[4] Plaintiff's claims for wrongful death are also barred by the statute of limitations. *See* Def. Mot. to Dismiss Pl.'s Compl., or Alternatively, Mot. to Strike Certain Allegations and for More Definite Statement at 6–9. In her initial complaint, Plaintiff alleged that Decedent was diagnosed with smoking related injuries in November 2013. *See* Compl. for Damages & Demand for Trial by Jury at 1. This allegation is notably absent from Plaintiff's Amended Complaint. While Defendants recognize that "[a]n amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader," *InterGen N.V. v. Grina,* 344 F.3d 134, 144–45 (1st Cir. 2003), Defendants wish to preview for the Court issues that discovery will reveal.

unwarranted deductions of fact[].” *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

**ARGUMENT**

## I.   PLAINTIFF FAILS TO STATE A VIABLE CLAIM UNDER RICO.

Plaintiff asserts a claim against Defendants for violations of RICO and seeks damages for her own personal injury claims and wrongful death claims on behalf of the estate of Decedent.  Her claim fails because she fails to state a cause of action under RICO.

*First*, personal injury and wrongful death claims cannot provide a basis for RICO claims, nor can pecuniary losses flowing from such injuries.  *Second*, Plaintiff fails to properly allege her claims with the requisite level of particularity.  *Third*, Plaintiff's RICO conspiracy claim fails because her underlying RICO claim fails. Because of these deficiencies, Plaintiff's RICO claims should be dismissed.

### A. Plaintiff Cannot Recover Damages for Personal Injury or Wrongful Death Under RICO.

RICO requires that a party be "injured in his business or property."  18 U.S.C. § 1964(c); *see also Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998).  Federal courts have consistently held that personal injury and wrongful death actions cannot provide a basis for a RICO claim. *See Grogan v. Platt*, 835 F.2d 844, 846–47, 848 (11th Cir. 1988) (affirming dismissal of RICO complaint where damages sought were on the basis of personal

injury because RICO does not permit recovery for "personal injuries, including the pecuniary losses therefrom"); *see also Connor v. Halifax Hosp. Med. Ctr.*, 135 F. Supp. 2d 1198, 1219 (M.D. Fla. 2001) ("The loss of life is personal in nature, and therefore not cognizable under RICO, even assuming that there are related pecuniary losses."); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565–66 (6th Cir. 2013) ("[B]oth personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c)."); *Evans v. City of Chicago*, 434 F.3d 916, 925 (7th Cir. 2006) ("[T]his court has determined that the terms 'business or property' are, of course, words of limitation which preclude recovery from personal injuries and the pecuniary losses incurred therefrom." (internal quotation marks omitted)); *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) (finding that damages from smoking-related illnesses are personal injuries, not injuries to business or property of the kind contemplated by RICO).

Plaintiff's Amended Complaint makes clear that the only damages she seeks are for personal injuries and the damages resulting therefrom.  *See* Am. Compl. for Damages and Demand for Trial by Jury ¶¶ 185–87 ("Am. Compl.").  Plaintiff cannot recover damages for personal injury or wrongful death under RICO.  As such, her claim fails.

Similarly, Plaintiff cannot maintain a RICO claim by alleging that she incurred economic damages derived from her and Decedent's claimed addiction to

nicotine.  Courts have consistently held that medical expenses and other pecuniary losses resulting from personal injuries are not recoverable under RICO.  *See Grogan*, 835 F.2d at 846–47 (family of murder victim could not recover under RICO for economic consequences of murder); *Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 73 (D. Mass. 2000) ("The only economic harms recounted in the complaint are the accumulated costs of purchasing cigarettes during plaintiff's many years of smoking.  While these harms are certainly pecuniary, they are not the sort of economic harms actionable under RICO.  They are instead harms that derive from personal injuries. The RICO count must be dismissed."); *Allman v. Philip Morris, Inc.*, 865 F. Supp. 665, 668 (S.D. Cal. 1994) (where plaintiff sought costs of nicotine patches and medical expenses, court held that "[s]uch pecuniary consequences of personal injuries are not recoverable under RICO.").  Here, Plaintiff alleges only personal injuries and damages resulting from those injuries.  Nowhere does Plaintiff allege any distinct and separate injury to business or property independent of Plaintiff's alleged injuries.  The damages she seeks are not available under RICO. Because Plaintiff does not allege any loss of "business or property," she lacks standing to bring suit under RICO, and her RICO claim should be dismissed.

**B. Plaintiff Fails to Adequately Plead the Required Predicate Acts.**

"Essential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a pattern of racketeering activity." *Jackson v.*

*BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004) (internal quotations omitted). To successfully plead a RICO claim, Plaintiff must demonstrate that Defendants participated in at least two predicate acts of racketeering. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

Here, Plaintiff asserts that Defendants engaged in wire and mail fraud. "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir, 2010). To survive a motion to dismiss, RICO claims based on fraud-related predicate acts must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Id.* at 1291.

Where a mail or wire fraud claim is based on fraudulent omissions, like here, the plaintiff must establish that the defendant had a duty to disclose the omitted facts. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007). A duty to disclose arises "when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Chiarella v. United States*, 445 U.S. 222, 228 (1980).

Here, Plaintiff has not alleged that there was any type of fiduciary relationship between herself, Decedent, and Defendants. Nor has Plaintiff alleged that she or her

Decedent ever engaged in a direct transaction with any Defendant.  Rather Plaintiff broadly asserts that Defendants had a duty to disclose because they had superior knowledge.  *See* Am. Compl. ¶ 172.

Moreover, to state a claim for mail or wire fraud, a plaintiff must show that she was deceived by the defendant's communications.  *See Am. Dental Ass'n*, 605 F.3d at 1291–92.  While Plaintiff points to a number of statements allegedly made by Defendants, *see* App'x to Compl., she does not allege how any of those statements misled her or Decedent.  *See Am. Dental Ass'n*, 605 F.3d at 1291–92 (finding that while the complaint set out many examples of communications, the plaintiff failed to allege deceptive conduct in order to plead RICO because she did not allege the manner in which she was misled by the communications).  Rather, in a conclusory manner, Plaintiff alleges that "[m]embers of the public"—not herself or Decedent— believed and relied upon Defendants' statements.  *See* Am. Compl. ¶ 176.  Having failed to plead a duty to disclose or that she or Decedent were misled, Plaintiff also fails to state a claim for mail or wire fraud under RICO.

### C. Plaintiff Fails to Plead a RICO Conspiracy Claim.

Plaintiff's RICO conspiracy claim under 18 U.S.C. § 1962(d) also fails as a matter of law.  No pleaded facts show any unlawful agreement among the alleged conspirators.  Plaintiff pleads in a conclusory fashion that "defendants . . . and others known and unknown . . . unlawfully, knowingly and intentionally . . . conspire[d]

. . . with each other, and with others whose names are both known and unknown, to conduct and participate, directly and indirectly, in the conduct of the affairs of the [] Enterprise."  Am. Compl. ¶ 179.  This bare-bones recitation of the legal elements of conspiracy, unsupported by factual allegations, does not satisfy federal pleading requirements, much less the particularity demanded by Rule 9(b).

In any event, Plaintiff's RICO conspiracy claim fails for the simple reason that Plaintiff fails to state a claim under the substantive RICO provision that is the object of the alleged conspiracy.  "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO. . . . [T]he failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO."  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

## II.   PLAINTIFF'S COMPLAINT FAILS TO ALLEGE A VIABLE CLAIM FOR NEGLIGENCE, STRICT LIABILITY, OR NEGLIGENT MISREPRESENTATION.

Plaintiff's allegations in support of her negligence (Count II), strict liability (Count III), and negligent misrepresentation (Count IV) claims do not allege the ultimate facts necessary to state viable causes of action.  Plaintiff's lengthy Amended Complaint alleges a great deal of generalized historical conduct but says nothing about how that conduct caused Plaintiff's and Decedent's alleged smoking-related

injuries.  This failure dooms Plaintiff's negligence, strict liability, and negligent misrepresentation claims.

To state a claim for negligence, a plaintiff must allege facts sufficient to show (1) a duty requiring the defendants to conform to a certain standard of conduct, (2) a failure on the defendants' part to conform to that standard, (3) legal cause between the conduct and the resulting injury, and (4) actual loss or damage.  *Troug v. Mid-Am. Apartment Communities, Inc.*, 356 F. Supp. 3d 1332, 1338 (M.D. Fla. 2019); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 30, pp. 164–65 (5th ed. 1984).

To state a claim for strict product liability, a plaintiff must plead facts sufficient to show (1) that the product is defective, and (2) that such defect caused plaintiff's injuries.  *Liggett Grp., Inc. v. Davis*, 973 So. 2d 467, 475 (Fla. 4th DCA 2007).  A design defect—which is what Plaintiff alleges in this case—is "a defect which renders the product unreasonably dangerous."  *Id.*

Finally, to state a cause of action for negligent misrepresentation, a plaintiff must plead facts showing: (1) the defendant made a misrepresentation of material fact believed to be true but that was in fact false; (2) the defendant was negligent in making the statement because he should have known it was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) a resulting injury to the plaintiff acting in justifiable reliance.  *See SIG, Inc. v. AT&T Digital*

*Life, Inc.*, 971 F. Supp. 2d 1178, 1198 (S.D. Fla. 2013).  Moreover, "[c]laims for negligent misrepresentation must be pled to meet the particularity standard required by Rule 9(b) for fraud claims because, in Florida, 'negligent misrepresentation sounds in fraud.'" *Id.* (quoting *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013)).

For the five reasons that follow, Plaintiff fails to plead certain essential elements of her claims with the requisite particularity.

### A. Plaintiff Has Not Adequately Alleged the Cigarettes She and Decedent Smoked Were Dangerous Beyond the Expectation of the Ordinary Consumer (Count III).

In one short paragraph, Plaintiff asserts that Defendants are strictly liable because their cigarettes "failed to perform safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the Plaintiff's Decedent."  Am. Compl. ¶ 194(c).  This conclusory allegation, without more, is insufficient to meet the requirements of the ordinary consumer test under federal fact pleading standards.  Plaintiff has not alleged any *facts* about what the specific expectations of ordinary consumers regarding cigarettes were, or the time period during which she contends cigarettes were more dangerous than ordinary consumers expected they would be.  These facts are necessary to inform Defendants of the nature of the claims against them, because the expectations of the ordinary consumer have changed drastically over the last 50 years.  A claim that Defendants'

cigarettes were dangerous beyond the expectation of ordinary consumers in 1970 is much different from the same claim based on consumer expectations in 2022. Plaintiff's vague assertion that the ordinary consumer "at all times material. . . did not in the exercise of ordinary diligence know of the likelihood of, or the severity of, the risks from Defendants' cigarette products" is insufficient, especially where the term "at all times material" is not defined anywhere within the Complaint, and where the allegations span half a century. *Id.* ¶ 6.

Plaintiff's bare allegation that Defendants' cigarettes failed to perform safely as an ordinary consumer would expect, without ultimate facts to support that legal conclusion, is legally insufficient.  This is particularly true in light of the federally mandated warning labels that have appeared on all packs of cigarettes sold in the U.S. since 1970 to inform "the ordinary consumer/user" that this product is in fact dangerous to health.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 489 n.9 (1996) (stating that the federally mandated pack warnings are "both necessary and sufficient" to inform consumers about the dangers of the product).  Plaintiff must allege facts to explain how the *products that she and Decedent smoked* were more dangerous than the ordinary consumer would expect notwithstanding those ubiquitous and concrete warnings.  Plaintiff's Amended Complaint does not come close to meeting this pleading requirement.  While the Amended Complaint lists the brands Plaintiff and Decedent smoked, it does not state during which time periods

they allegedly smoked each brand, much less explain how those brands, whichever brands they were, were more dangerous than the ordinary consumer could expect after reading the warning labels.

**B. Plaintiff Has Not Adequately Alleged a Safer Alternative Design (Counts II and III).**

Plaintiff further alleges that Defendants are liable under theories of negligence and strict liability because they "fail[ed] to make such feasible improvements in design, composition, or manufacture[] of its cigarette products such as to materially decrease the foreseeable risk to users." *See* Am. Compl. ¶ 190(h).  For example, Plaintiff asserts that Defendants are liable because their cigarettes were defective due to:

> Insufficient reduction in tar and other carcinogens by dilution and filtration; Lack of distinctly marked vent holes; . . . Excessive in nicotine delivery; . . . In being designed to yield fewer carcinogens when measured by artificial means, than was actually received in the lung of cigarette smokers; The tobacco therein was treated with ammonia causing the nicotine to be transformed into freebase, thereby increasing the addictiveness of the product.

*Id.* ¶ 194(xii)–(xiii), (xv), (xx)–(xxii).  Plaintiff also asserts, without any factual support, "that there were feasible improvements in design, composition, or manufacture of cigarette products such as to materially decrease the foreseeable risk to users."  *Id.* ¶ 42(g).  But Florida courts have declined to adopt the reasonable alternative design requirement of the risk-utility test, instead finding that the consumer expectations test applies to strict products liability cases.  *See Aubin v.*

*Union Carbide Corp.*, 177 So. 3d 489, 510 (Fla. 2015) ("Thus, in approaching design defect claims, we adhere to the consumer expectations test, as set forth in the Second Restatement, and reject the categorical adoption of the Third Restatement and its reasonable alternative design requirement."); *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1270 (S.D. Fla. 2020).

Even if Florida recognized the risk-utility test's reasonable alternative design requirement, Plaintiff's claims would still fail. As the Eleventh Circuit explained in a case decided more than a decade before the Florida Supreme Court questioned the test in *Aubin*, "[a] product is defective in design, under Florida law, 'when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design' and its omission 'renders the product not reasonably safe.'" *Edic ex rel. Edic v. Century Prods. Co.*, 364 F.3d 1276, 1279 n.2 (11th Cir. 2004) (quoting *Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002)). If Plaintiff insists on proceeding with for a claim based on the availability of a reasonable alternative design, she must at least plead facts that entitle her to relief on this claim. She has failed to do so here. Plaintiff has not pleaded any facts that support her assertion that a safer alternative design for any of Defendants' cigarettes was either possible or feasible. She never pleads what that alternative design would have looked like, much less how it could have been commercially feasible. Nor does Plaintiff's Amended Complaint even

14

attempt to allege how any purported failure to adopt this unidentified and speculative safer alternative design impacted her or Decedent, either in terms of whether they would have availed themselves of an alternative safer design or whether they would have avoided or reduced their alleged injuries had they smoked cigarettes implementing that design. *See Sexton v. United States*, 132 F. Supp. 2d 967, 974 (M.D. Fla. 2000) (a plaintiff must prove that but for the defendants' negligence, "no injury would have occurred"). Plaintiff's claims based on a safer alternative design thus fail.

### C. Plaintiff Fails to Plead Negligence or Defect Beyond the Risks Inherent in All Cigarettes (Counts II and III).

To the extent Plaintiff alleges Defendants' cigarettes were defective or negligently designed based on risks inherent in all cigarettes, those claims are legally barred. Any claim that assigns liability based on Defendants' continued manufacture of cigarettes is legally barred because it would "would run afoul of the congressional policy that the sale of cigarettes is legal." *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220, 1223 (W.D. Wisc. 2000); *see also Davis*, 973 So. 2d at 473.

Plaintiff's Amended Complaint contains allegations of just this kind—that cigarettes are defective because they have features that cannot be eliminated from cigarettes without turning them into something other than cigarettes. For example, Plaintiff alleges that Defendants are strictly liable for selling cigarettes that "caused or contributed to the illnesses" and that "were addictive, habituating, habit-forming,

and once used caused physical and psychological dependence."   Am. Compl. ¶ 194(a)-(b).   But these harmful characteristics of cigarettes are not the result of any manipulation by Defendants; rather, cigarettes are *inherently* dangerous and addictive.

Allegations of this kind are also insufficient as a matter of state law.   Because it is impossible to design a product to exclude a necessary feature, the presence of such a feature cannot be a design defect and therefore cannot be a legal cause of compensable injury.   *See Coulson v. DeAngelo*, 493 So. 2d 98, 99 (Fla. 4th DCA 1986) (per curiam) (gun manufacturer cannot be held strictly liable for criminal shooting because there is not "something 'wrong' with" a gun used to commit crimes; the ability to fire a bullet is what makes it a gun); *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 768 N.W.2d 674, 685 (Wis. 2009) ("A claim for defective design cannot be maintained" based on the product's having a quality whose "very presence is a characteristic of the product itself."").   Thus, "[g]ood tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful."   Restatement (Second) of Torts § 402A, cmt. i (1965).   "[O]nly 'bad' tobacco should be subject to the section 402A standard."   *Davis*, 973 So. 2d at 480 (Gross, J., concurring specially) (citing *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1144 (Fla. 1st DCA 1981)).

Further, Plaintiff's allegations that Defendants' cigarettes were defective because she disagrees with their size or the way they were packaged simply cannot support a claim for strict liability.  Accordingly, Plaintiff's claims fail to the extent they are based on the continued manufacture of a legal, but inherently dangerous product.

Plaintiff further alleges that Defendants are strictly liable because "the risk of danger from the design of Defendants' cigarette product outweighed the benefits obtained with the use of the products."  Am. Compl. ¶ 194(d).  But as stated above, Florida courts have declined to impose liability based on this kind of risk-benefit analysis.  *See McConnell v. Union Carbide Corp.*, 937 So. 2d 148, 151 n. 4 (Fla. 4th DCA 2006) ("We purposefully forbear from any reliance on the Restatement (Third) of Torts and its risk-benefit analysis until the supreme court has recognized it as correctly stating the law of Florida."); *see also Aubin*, 177 So. 3d at 510 ("Thus, in approaching design defect claims, we adhere to the consumer expectations test, as set forth in the Second Restatement, and reject the categorical adoption of the Third Restatement and its reasonable alternative design requirement.").  And, even if Florida recognized the risk-benefit analysis, Florida appellate courts have already found this theory inapplicable to cigarettes.  *See, e.g.*, *Davis*, 973 So. 2d at 474 (so holding).  Thus, to the extent Plaintiff's allegations represent an attempt to satisfy

the risk-benefit test, that test is inapplicable, and those allegations cannot support a claim for relief.

**D. Plaintiff's Allegations that Defendants are Liable for Manipulating the Design of Cigarettes Do Not Satisfy Federal Fact Pleading Standards (Counts II and III).**

In other parts of her Amended Complaint, Plaintiff alleges that Defendants "deliberately manipulated" the design of cigarettes, making them more dangerous and addictive. But Plaintiff has not alleged any facts about whether and how this alleged "manipulation" impacted her or Decedent, their alleged addiction, their ability to quit smoking, or their alleged respective smoking-related diseases. Plaintiff's theory of liability based on Defendants' alleged manipulation of cigarettes relies, at least in part, on her assertion that these manipulations were done "to foster and maintain addiction of their customers, including the Plaintiff's Decedent," Am. Compl. ¶ 209, and that "Defendants' cigarette products failed to contain sufficient instructions for use or for safer use, including . . . [d]irections to attempt to quit smoking." Am. Compl. ¶ 194(f)(iv). But Plaintiff has not alleged when or how she or Decedent ever tried to quit smoking, let alone how their smoking histories would have materially differed had Defendants not manipulated nicotine or had they "directed" smokers to try to quit smoking. Without the omitted necessary facts, Plaintiff cannot show a causal link between Defendants' conduct and her or

Decedent's injuries.  Consequently, Plaintiff's claims based on Defendants' alleged manipulation of the design of cigarettes are also subject to dismissal.

**E. Plaintiff's Claim for Negligent Misrepresentation Fails (Count IV).**

Count IV of Plaintiff's Amended Complaint attempts to state a claim for negligent misrepresentation.  However, Count IV does not allege certain required elements.  In particular, the Amended Complaint does not allege that Defendants had any legal duty to provide information to Plaintiff or Decedent, *see Blumstein v. Sports Immortals, Inc.*, 67 So. 3d 437, 441 (Fla. 4th DCA 2011), or that Plaintiff or Decedent "*justifiably* or *reasonably* relied" on any misrepresentation, *see Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 778 (Fla. 5th DCA 2007) ("As to the claim of negligent misrepresentation, [the plaintiff] was required to plead and prove that he justifiably or reasonably relied on the alleged misrepresentation").  Further, "[a] party cannot rely to his detriment on an unenforceable promise" and "is not justified in relying upon some action which the other party is not required to perform." *Basciano*, 960 So. 2d at 778. To the extent Plaintiff is claiming that Defendants simply should have provided her and Decedent with more information about their products, any such claim is preempted by the Federal Labeling Act after 1969.  *See* 15 U.S.C. § 1331(b); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 524 (1992).

Throughout her Amended Complaint, Plaintiff repeatedly points to several quotes from "A Frank Statement to Cigarette Smokers," published on January 4,

1954, to support a theory that "Defendants assumed voluntarily the duty otherwise imposed upon it by law."  Am. Compl. ¶ 200.  But a published advertisement does not create an enforceable contract or promise upon which anyone is entitled to rely. Even if a widely disseminated publication such as "A Frank Statement to Cigarette Smokers" in the 1950s could be read as creating a duty to every single person who read it, there is nothing in the Amended Complaint that would indicate that Plaintiff or Decedent saw, read, or even heard about "A Frank Statement to Cigarette Smokers," let alone justifiably relied to their detriment on it sufficient to allege a claim for negligent misrepresentation.  For these reasons, Plaintiff's negligent misrepresentation claims necessarily fail.

## CONCLUSION

For the foregoing reasons, the Court should enter an order dismissing Plaintiff's Amended Complaint in its entirety—this time with prejudice.

Respectfully submitted,

*/s/ Ashley P. Hayes*
Frank Cruz-Alvarez
*LEAD COUNSEL*
Florida Bar No.: 0499803
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 S. Biscayne Boulevard
Miami, Florida  33131
Telephone:   (305) 358-5171
Facsimile:   (305) 358-7470
SHBPMAttyNonEngle@shb.com
falvarez@shb.com

Ashley P. Hayes
Florida Bar No.:  91483
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, Florida  33602
Telephone:   (813) 202-7100
Facsimile:    (813) 221-8837
SHBPMAttyNonEngle@shb.com
ahayes@shb.com

***Counsel for Philip Morris USA Inc.
(and filing on behalf of R.J. Reynolds
Tobacco Company for this filing
only)***

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing has been furnished by Electronic Service through the CM/ECF E-Filing Portal to all counsel of record registered to receive such service and by Electronic Mail to all counsel on the attached Service List on this 19th day of April, 2022.

*/s/ Ashley P. Hayes*
**Counsel for Philip Morris USA Inc.**

## SERVICE LIST
### *Dessie Johnson v. Philip Morris USA, Inc., et al.*

***Counsel for Plaintiff:***
Richard Collins, Esq.
COLLINS & TRUETT
ATTORNEYS, P.A.
8333 N.W. 53rd Street – Suite 450
Doral, FL  33166
Dick@CollinsTruett.com

Benjamin L. Crump, Esq.
BEN CRUMP LAW, PLLC
122 South Calhoun Street
Tallahassee, FL  32301
court@bencrump.com

***Counsel for Liggett Group LLC:***
Kelly Anne Luther, Esq.
Maria H. Ruiz, Esq.
Giselle Gonzalez Manseur, Esq.
KASOWITZ BENSON TORRES LLP
1441 Brickell Avenue, Suite 1420
Miami, Florida  33131
kluther@kasowitz.com
mruiz@kasowitz.com
gmanseur@kasowitz.com

***Counsel for R.J. Reynolds Tobacco Company:***
Emily Baker, Esq.
Simon P. Hansen, Esq.
JONES DAY
1221 Peachtree St, N.E., Suite 400
Atlanta, GA  30309-3053
ecbaker@jonesday.com
shansen@jonesday.com

Larry Hill, Esq.
Charles Beall, Esq.
MOORE, HILL &
WESTMORELAND, P.A.
350 W. Cedar Street. Suite 100
Pensacola, FL  32502
lhill@mhw-law.com
cbeall@mhw-law.com